UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ROSALIE SOLLER and
KENNETH DAVE SOLLER,

                Plaintiffs,

-against-

POLICE OFFICER BRYAN BOUDREAUX,
SERGEANT WILLIAM TODORO, SOCIAL
SERVICES REPRESENTATIVE, COUNTY OF
SUFFOLK and TOWN OF SMITHTOWN,

                Defendants.

------------------------------------------------------------X

FEUERSTEIN, J.

12-CV-0167 (SJF)(SIL)

**OPINION & ORDER**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   FEB 03 2015   ★

**LONG ISLAND OFFICE**

On January 9, 2012, plaintiffs Rosalie Soller ("Rosalie") and Kenneth Dave Soller

("Kenneth") (collectively, "plaintiffs") filed a *pro se* complaint pursuant to 42 U.S.C. § 1983

("Section 1983") against defendant "Badge #5972," subsequently identified as Police Officer

Bryan Boudreaux ("P.O. Boudreaux"), and "John Doe (2nd Policeman),"[1] seeking "monetary

compensation" for the "mental anguish" they allegedly sustained as a result of, *inter alia*, the

"unlawful entry" of their home. (Compl., ¶¶ IV and V). On January 30, 2012, plaintiffs filed a

*pro se* amended complaint, *inter alia*, adding "Road Supervisor #43G," subsequently identified

as Sergeant William Todoro ("Sgt. Todoro"); "Social Services Representative;" the Suffolk

County Police Department ("SCPD"); "Suffolk County Police Dept. chief executive;" "County of

Suffolk Executive;" the County of Suffolk ("the County"); and the Town of Smithtown ("the

---

[1] On September 13, 2014, plaintiffs voluntarily dismissed their claims against, *inter alia*,
"John Doe (2nd Policeman)" pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

1

Town") as additional defendants.[2] By order dated May 24, 2012, *inter alia*, plaintiffs were (a) granted leave to file a second amended complaint ("SAC") and (b) directed to serve and file summonses and the SAC upon all defendants on or before June 30, 2012. (Docket Entry ["DE"] 10). On July 16, 2012, Salvatore A. Lecci, Esq. filed a notice of appearance on behalf of plaintiffs and plaintiffs' *pro se* SAC against the same defendants.

Pending before the Court are: (1) plaintiffs' motion to amend this Court's July 15, 2013 Minute Order granting Mr. Lecci's motion to withdraw as their counsel in this action to require him to repay the retainer fee that they paid to him; (2) the County's motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings; and (3) plaintiffs' cross motion for (a) partial summary judgment on their Section 1983 Fourth Amendment claims against P.O. Boudreaux and Sgt. Todoro pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and (b) leave to amend the SAC to substitute P.O. Boudreaux and Sgt. Todoro for defendants "Badge #5972" and "Road Supervisor #43G," respectively. For the reasons stated herein, the branch of plaintiffs' cross motion seeking leave to amend the SAC to substitute P.O. Boudreaux and Sgt. Todoro for defendants "Badge #5972" and "Road Supervisor #43G" is granted, and the cross motion is otherwise denied; the County's motion for judgment on the pleadings is converted to a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure and, as such, is granted; plaintiffs' claims against the Town are *sua sponte* dismissed for failure to state a claim for relief; and plaintiffs' motion to amend the July 15, 2013 Minute Order is denied.

---

[2] On September 13, 2014, plaintiffs voluntarily dismissed their claims against, *inter alia*, "Suffolk County Police Dept., chief executive," the SCPD and the "County of Suffolk Executive" pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

I. Background

   A.   Factual Background

        1.   Allegations in the SAC

Kenneth is Rosalie's son. (See SAC). Plaintiffs allege, *inter alia*, that on January 9,

2009, between approximately 3:50 p.m. and 11:50 p.m., "there was banging on outside of

house," then two (2) policemen "broke down back door and questioned [Kenneth] for many

hours about alleged death of parents." (SAC, ¶ III.C). According to plaintiffs, the policemen

"entered two times without a warrant." (Id.)

Plaintiffs further allege, *inter alia*, that "Social Service's Representative came to house

relating to January 9, 2009 incident with a false report" and that the remaining defendants "are

responsible also and are liable." (SAC, ¶ III.C).

Rosalie claims, *inter alia*, the following injuries: (1) "unlawful entry to [her] home[;]" (2)

emotional trauma (a) from being "accused of being dead or murdered[,]" (b) from "alleged body

missing in [her] house[,]" (c) "for being missing when [she was] not missing[,]" (d) "of

neighbors thinking [she was] allegedly missing and [she] was not missing[,]" (e) "from son

allegedly murdering parents[] * * * and knowing parents were missing[,]" and (f) "for alleged

accusations of son and false imprisonment of him[;]" (3) an "illegal[] search[]" of her house; (4)

"a bad reaction to [her] son being excessively questioned for many hours without warrants[] * *

* [and] [to] [p]eople on block being questioned without cause[;]" (5) defamation; (6) "[d]amage

of police allegedly accusing [her] son about missing parents[;]" (7) "mental stress and

aggravation of being accused of being murdered[;]" (8) "humiliation of allegedly being missing

and murdered[;]" (9) "mental anguish;" (10) "trespass[] on [her] property and inside of [her]

3

house[;]" (11) harassment; (12) "[i]ntrusion into [her] personal life[;]" (13) "[d]istress of returning home and finding [it] * * * broken into[;]" (14) violations of her constitutional rights; and (15) "[i]nvasion of privacy of house[.]" (SAC at 5-6).

Kenneth claims, *inter alia*, the following injuries: (1) "pain and suffering" from the "many hours of breaking in" because he "believed the intruders would hurt [him]" and he "perceived it as [a] threat[;]" (2) "unlawful entry of house[;]" (3) being "confronted in a negative way when question[ed][;]" (4) "[e]conomic loss of money due to defending [him]self[;]" (5) "court legal fees and lawyer fees[;]" (6) "threat to [his] safety, well being, recurring entry to home (2 times without warrant)[;]" (7) "[l]oss of dance opportunities- amateur and Professional[;]" (8) "[i]llegal search of property[;]" (9) violations of his Fourth Amendment constitutional rights; (10) "trespasses on [his] property, was not free to leave[;]" (11) "unreasonable and false imprisonment in house[;]" (12) being "[q]uestioned for something [he] didn't do[;]" (13) "embarras[sment] and humiliat[ion][;]" (14) having his home "broke[n] into" and being "terrorized [] even though [he] was innocent[;]" (15) "trauma" from being "accused of alleged murder[;]" (16) defamation; (17) many hours of "[e]xcessive questioning[;]" (18) wrongful accusations; (19) mental anguish; (20) having a "frightening experience" because he "fear[ed] persons breaking in could harme [sic] [him][;]" (21) harassment; (22) unlawful detention; and (23) "invasion of privacy of home[.]" (SAC at 7-8).

Plaintiffs seek, *inter alia*, punitive and compensatory damages in an unspecified amount.

## 2. Undisputed Facts[3]

On January 9, 2009, at approximately 3:50 p.m., the SCPD received a 911 call from Elizabeth Napoli ("Napoli"), a case worker with Suffolk County Adult Protective Services ("SCAPS"), reporting that people from the Smithtown Senior Center ("the Senior Center") (a) told her that an "elderly couple," who were seventy (70) and seventy-two (72) years old, walk approximately one and a half (1.5) miles from their house to the Senior Center every day that it is open for their lunchtime meals and "eat everything in sight," including leftovers from other people's plates, "as if they have not seen food," had not been seen at the Senior Center for over one (1) week; and (b) expressed concern to her that something had happened to the elderly couple. (Plaintiffs' 56.1 Statement ["Plf. 56.1 Stat."], ¶¶ 1-3; County's Counter Statement pursuant to Local Rule 56.1 ["Cty. 56.1 Stat."] at 1). Napoli provided no information about the reliability or trustworthiness of the information she had received from the people from the Senior Center, (Plf. 56.1 Stat., ¶ 4; Cty. 56.1 Stat. at 1), but she did (a) identify the elderly couple as Rosalie and Julius Soller (collectively, "the Sollers") and (b) provide the 911 operator with (i) the Sollers' telephone number; (ii) the address of the Sollers' residence, located at 120 Terry Road,

---

[3] Paragraphs 18, 20 and 21 of plaintiffs' Statement of Undisputed Facts pursuant to Local Civil Rule 56.1 ("56.1 Statement") are actually legal conclusions, not statements of fact. Likewise, paragraphs 22 through 25 of plaintiffs' 56.1 Statement regarding what a judicial officer would, or should, have done if presented with a search warrant are pure speculation, not statements of fact. Moreover, plaintiffs do not cite to any admissible evidence in support of those assertions and "[a] Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001); see also New York Civil Liberties Union v. Grandeau, 528 F.3d 122, 132 (2d Cir. 2008). "[W]here there are no[] citations or where the cited materials do not support the factual assertions in the [56.1] Statements, the Court is free to disregard the assertion." Holtz, 258 F.3d at 73-4 (quotations and citations omitted); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003). Accordingly, I disregard all of plaintiffs' unsupported, conclusory and/or speculative assertions in their 56.1 Statement.

Smithtown, New York ("the Soller residence"), (Plf. 56.1 Stat., ¶¶ 6 and 11; Cty. 56.1 Stat. at 1);

(iii) a description of the Soller residence and its location; and (iv) the Sollers' dates of birth.

(Cty. 56.1 Stat. at 1; Mitchell Decl., Ex. F). The 911 operator acknowledged receiving all of the

foregoing information, (Plf. 56.1 Stat., ¶ 8; Cty. 56.1 Stat. at 2), and "asked if the subjects of the

call had any medical history." (Cty. 56.1 Stat. at 2). Napoli responded that Mr. Soller had

recently been hospitalized, but she did not know for what reason. (Cty. 56.1 Stat. at 2). In

addition, Napoli indicated (a) that there "seems to be an adult son in the house;" (b) that a

"workman" who had visited the home reported (i) that the son had just stood in the corner for

about a half hour until he was told to go into the hall, then he just stood in the hall and stared

without talking "or anything," so she did not know if the son was "retarded or mentally ill or

what," and (ii) that the house was in "bad condition with garbage and food and stuff laying

around;" and (c) that the SCAPS office was only open until 4:30 p.m. and that no one would

answer the phone after that time, so if the SCPD needed anything from SCAPS, they were to call

the emergency services number that she provided.[4] (Mitchell Decl., Ex. F). The 911 operator

relayed the information received from Napoli to a dispatcher at SCPD headquarters. (Plf. 56.1

Stat., ¶ 9; Cty. 56.1 Stat. at 2).

Shortly before 4:10 p.m. on January 9, 2009, SCPD headquarters dispatched via radio

---

[4] Although plaintiffs contend that "Ms. Napoli informed the 911 Operator that the Senior Center closed at 4:30 P.M. and after that time no one would be present and no one would answer the Center's telephone," (Plf. 56.1 Stat., ¶ 7), it is clear from the audio recording of the 911 call that Ms. Napoli was referring to the SCAPS office as closing at 4:30 p.m., not the Senior Center. (Mitchell Decl., Ex. F). "Although on summary judgment the evidence must be viewed in the light most favorable to * * * the non-moving parties, when there is reliable objective evidence– such as a[n] [audio] recording– the evidence may speak for itself." Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012), cert. denied, 133 S. Ct. 1492, 185 L. Ed. 2d 548 (2013).

"Car No. 416" to the Soller residence in response to the 911 call to "[c]heck on the [w]elfare" of the Sollers. (Plf. 56.1 Stat., ¶¶ 10 and 11; Cty. 56.1 Stat. at 1). According to P.O. Boudreaux, in being assigned the "'check on the welfare' call" at the Soller residence, he was advised: (1) "that the occupants of that home, Rosalie and Yulius [sic] Soller, normally went to the Smithtown Senior Center every day, but they had not been seen at the center for a week[,]" (Declaration of Brian C. Mitchell ["Mitchell Decl."], Ex. C, ¶¶ 2-3); and (2) "that the Sollers had a handicapped son and * * * that Mr. Soller had been hospitalized in the past month, for reasons unknown." (Id., ¶ 4).

Upon arriving at the Soller residence at approximately 4:10 p.m., P.O. Boudreaux and Sgt. Todoro (collectively, "the officers") knocked on the front and back doors for approximately twenty (20) minutes without response. (Plf. 56.1 Stat., ¶ 11; Cty. 56.1 Stat. at 1; Mitchell Decl., Exs. C, ¶ 5 and E). After canvassing the neighborhood with negative results, the officers departed from the Soller residence some time after 4:30 p.m. and traveled to the Senior Center in order to obtain more information. (Plf. 56.1 Stat., ¶¶ 12 and 14; Cty. 56.1 Stat. at 1; Mitchell Decl., Ex. Cs, ¶¶ 6-7 and E). The officers arrived at the Senior Center at approximately 5:00 p.m., but it was closed. (Mitchell Decl., Exs. C, ¶ 7 and G). After reporting their unsuccessful canvas of the Senior Center to SCPD headquarters via radio, the officers further reported that they intended to return to the Soller residence to conduct a "forced entry." (Plf. 56.1 Stat., ¶¶ 16 and 17; Cty. 56.1 Stat. at 1). There was no recorded discussion between the officers and headquarters regarding obtaining a warrant before forcibly entering the Soller residence. (Plf. 56.1 Stat., ¶ 19; Cty. 56.1 Stat. at 2).

Although plaintiffs contend that since the officers got no results from their canvas of the

7

Sollers's neighborhood, they "had no information about whether an automobile customarily parked at the residence was not there indicating that the residents were 'out[,]'" (Plf. 56.1 Stat., ¶ 13), the County correctly points out that "[t]here is nothing in the available record to support the contention that an automobile was customarily parked at the residence." (Cty. 56.1 Stat. at 2). To the contrary, it was reasonable to infer from Napoli's assertion during her 911 call that the Sollers walked the approximate mile and a half from their home to the Senior Center on a daily basis, that they did not have an automobile. (Mitchell Decl., Ex. F).

The officers returned to the Soller residence at approximately 5:10 p.m. (Mitchell Decl., Ex. G). After gaining entry into the Soller residence via a "forced rear entry," (Mitchell Decl., Ex. E), the officers identified themselves as police officers, but received no response. (Mitchell Decl., Ex. C, ¶ 9). According to P.O. Boudreaux, the inside of the Soller residence was "extremely cluttered." (Id.) At approximately 5:20 p.m., the officers "found [Kenneth] hiding in the attic." (Id., Exs. C, ¶ 9 and G). "At that point [the officers] were able to contact another son of the Sollers, Jerome, who resided in Utah, * * * [and] advised [them] that he had just spoken to his parents that day" at approximately 11:00 a.m. (Id., ¶ 10 and Ex. E). Kenneth was not arrested.

B.    Procedural History

On January 9, 2012, plaintiffs filed a *pro se* complaint pursuant to Section 1983 against defendant "Badge #5972," subsequently identified as P.O. Boudreaux, and "John Doe (2nd Policeman)," seeking "monetary compensation" for the "mental anguish" they allegedly sustained as a result of the purported "unlawful entry" of their home. (Compl., ¶¶ IV and V). On

8

January 30, 2012, plaintiffs filed a *pro se* amended complaint, *inter alia*, adding defendants, "Road Supervisor #43g," subsequently identified as Sgt. Todoro; "Social Services Representative;" the County and the Town as additional defendants. By order dated May 24, 2012, *inter alia*, plaintiffs were (a) granted leave to file a SAC and (b) directed to serve and file summonses and the SAC upon defendants on or before June 30, 2012. (DE 10). On July 16, 2012, Mr. Lecci filed a notice of appearance on behalf of plaintiffs and the *pro se* SAC.

During a pretrial conference held before me on July 15, 2013, I, *inter alia*, (a) granted Mr. Lecci's motion to withdraw as plaintiffs' counsel in this action and (b) provided plaintiffs forty-five (45) days to retain new counsel to represent them in this case. Plaintiffs subsequently proceeded *pro se* in this action until September 8, 2014, when J. Joseph Bainton, Esq. filed a notice of appearance on their behalf.

Pending before the Court are: (1) plaintiffs' motion to amend this Court's July 15, 2013 Minute Order granting Mr. Lecci's motion to withdraw as their counsel in this action to require him to repay them the retainer fee that they paid to him; (2) the County's motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings; and (3) plaintiffs' cross motion for (a) partial summary judgment on their Section 1983 Fourth Amendment claims against P.O. Boudreaux and Sgt. Todoro pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and (b) leave to amend the SAC to substitute P.O. Boudreaux and Sgt. Todoro for defendants "Badge #5972" and "Road Supervisor #43G," respectively.

II.    Discussion

A.    Plaintiffs' Motion for Leave to Amend

Plaintiffs seek leave to amend their SAC to substitute P.O. Boudreaux and Sgt. Todoro

for defendants "Badge #5972" and "Road Supervisor #43G," respectively.  The County contends,

*inter alia*, that plaintiff's motion to amend should be denied as futile because, *inter alia*, the

statute of limitations has run on plaintiffs' claims against the officers and any amendment does

not relate back to the original complaint under Rule 15(c) of the Federal Rules of Civil

Procedure.[5]

1.    Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given

leave to amend "when justice so requires."  However, leave to amend is not required where, *inter*

*alia*, a proposed amendment would be futile, see Krys v. Pigott, 749 F.3d 117, 134 (2d Cir.

2014); Anderson News, L.L.C. v. American Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012), "as

when the proposed new pleading fails to state a claim on which relief can be granted[,]" Krys,

749 F.3d at 134, or the claims "would be barred by the applicable statute of limitations." Grace

v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000).

2.    Futility

"Section 1983 actions filed in New York are * * * subject to a three-year statute of

---

[5] The County's contentions that the officers are entitled to qualified immunity and that
plaintiffs' claims against them are without merit are addressed upon its Rule 12(c) motion, supra.

limitations." Hogan v. Fischer, 738 F.3d 509, 517 (2d Cir. 2013). "Generally, 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." Id. (quotations and citation omitted). A named individual may only be substituted for a "John Doe" defendant when all of the specifications of Rule 15(c) of the Federal Rules of Civil Procedure are met. See id. "Amended pleadings that meet the requirements of Rule 15(c) are considered to 'relate back' to the date of the original complaint." Id.

As relevant here, "Rule 15(c)(1)(A) permits an amended pleading to relate back when 'the law that provides the applicable statute of limitations allows relation back.'" Hogan, 738 F.3d at 518. "Unlike the Federal Rules of Civil Procedure, the New York Civil Practice Law and Rules ('CPLR') creates a special procedure for claims alleged against John Doe defendants." Id. (citing N.Y. C.P.L.R. § 1024 (McKinney 2013)). "Section 1024 of the CPLR reads:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. *If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.*"

Id. (emphasis added). "New York courts have interpreted [Section 1024 of the CPLR] to permit John Doe substitutions *nunc pro tunc*." Id. at 518-19.

"To take advantage of § 1024, a party must meet two requirements." Hogan, 738 F.3d at 519. "First, the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." Id. (quotations and citation omitted). "Second, the party must describe the John Doe party in such form as will fairly apprise the party that he is

11

the intended defendant." Id. (quotations, brackets and citation omitted). As both requirements were arguably met in this case, particularly since plaintiffs were proceeding *pro se* at the time the applicable limitations period expired, P.O. Boudreaux and Sgt. Todoro are substituted for defendants "Badge #5972" and "Road Supervisor # 43G," respectively, *nunc pro tunc*. The Clerk of the Court shall amend the caption of this action accordingly.

B.     County's Rule 12(c) Motion

1.     Conversion of Motion to Summary Judgment

In resolving a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); accord In re Thelen, LLP, 736 F.3d 213, 218 (2d Cir. 2013). Nonetheless, the County's contentions on its Rule 12(c) motion are based almost entirely on matters outside the pleadings, i.e., an affidavit from P.O. Boudreaux, (Mitchell Decl., Ex. C); a certified copy of the "Field Report" generated by P.O. Boudreaux, (id., Ex. E); a CD with a copy of the 911 call recording and a recording of police radio transmissions, (id., Ex. F); and a copy of the Computer Automated Dispatch ("CAD") page relating to the "check on welfare" 911 call, (id., Ex. G), which are not attached to, incorporated by reference in, or integral to the complaint  Nor may the Court properly take judicial notice of such items.

12

Rule 12(d) of the Federal Rules of Civil Procedure provides:

> "If, on a motion under Rule * * * 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

"Ordinarily, formal notice is not required where a party should reasonably have recognized the possibility that the motion might be converted into one for summary judgment and was neither taken by surprise nor deprived of a reasonable opportunity to meet facts outside the pleadings." Hernandez v. Coffey, 582 F.3d 303, 307 (2d Cir. 2009) (quotations, brackets and citations omitted); see also Sira v. Morton, 380 F.3d 57, 68 (2d Cir. 2004) ("A party is deemed to have notice that a motion may be converted into one for summary judgment if that party 'should reasonably have recognized the possibility' that such a conversion would occur." (quoting Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir.1999))). "The district court's conversion of a Rule 12(b)(6) [or Rule 12(c)] motion into one for summary judgment is governed by principles of substance rather than form." M.J.M. Exhibitors, Inc. v. Stern (In re G. & A. Books, Inc.), 770 F.2d 288, 295 (2d Cir. 1985). "The essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." Id. "Resolution of this issue will necessarily depend largely on the facts and circumstances of each case." Id.

"A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss [or for

judgment on the pleadings] * * *." M.J.M. Exhibitors, 770 F.2d at 295 (citation omitted); see also Reliance Ins. Co. v. Polyvision Corp., 474 F.3d 54, 57 (2d Cir. 2007) (finding that it was not error for the district court to consider evidence outside of the complaint in resolving a Rule 12(c) motion "without explicitly giving notice that it was converting the Rule 12 motion to a Rule 56 motion[,]" because it was "clear from the record * * * that [the non-moving party] knew additional factual considerations were being considered and, in fact, responded with its own evidentiary submissions."); Sira, 380 F.3d at 68 ("By attaching to their motion extensive materials that were not included in the pleadings, defendants plainly should have been aware of the likelihood of such a conversion.") Under such circumstances, neither party can complain that they were deprived of an adequate opportunity to provide the materials they deemed necessary to support or respond to the motion. See Sira, 380 F.3d at 68.

Plaintiffs not only had ample opportunity to present relevant material outside the pleadings in response to the County's motion, they, themselves, moved for partial summary judgment based upon the extrinsic material submitted by the County. Moreover, plaintiffs clearly had notice of the possibility that the County's motion might be converted into one for summary judgment, insofar as their counsel expressly raised that issue on two (2) occasions: (a) first in a letter to this Court dated September 12, 2014, (see DE 36 ["While not mentioning Rule 12(d) by name as we suggest Defendants should have done, Defendants' motion is a not subtle attempt to ask this Court to treat their motion as one for summary judgment pursuant to Rule 56, which is a decision that rests within the Court's discretion. We write to respectfully urge the Court to exercise its discretion now and thereby save all concerned a great deal of time. * * * [N]ow that the Court is aware that Defendants' Rule 12(c) motion is in fact a Rule 56 motion via

Rule 12(d) via Rule 12(c), we ask that you exercise your discretion now and advise Defendants that if they 'present matters outside the pleadings' in connection with their proposed Rule 12(c) motion, you will exclude them and not convert their motion to a Rule 56 motion."]); and (b) again in plaintiffs' memorandum of law in opposition to the County's motion and in support of their cross motion, (see "Memorandum of Law of Plaintiffs in Opposition to Defendants' Motion to Dismiss and in Support of Plaintiffs' Cross-Motion for Various Relief including Partial Summary Judgment" ["Plf. Mem."], at 4-5 ["Plaintiffs interpreted [the lack of response to their September 12, 2014 letter] as a willingness by the Court to convert the County's motion to a Rule 56 motion * * *. Hence Plaintiffs' cross-motion for partial summary judgment against the Police Officers under the theory of 'sauce for the goose, sauce for the gander.'"]) Accordingly, plaintiffs cannot now claim to have been unaware that this Court would consider material outside the pleadings in deciding the County's motion, nor that they lacked notice of the possibility that the Court would convert the motion for judgment on the pleadings into a motion for summary judgment. Accordingly, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, the County's motion under Rule 12(c) is "treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).


### 2. Standard of Review

"A motion for summary judgment may properly be granted * * * only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009); see Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.") In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); see Ricci v. DeStefano, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added) (internal quotations and citation omitted)); Vermont Right to Life Comm., Inc. v. Sorrell, 758 F.3d 118, 142 (2d Cir. 2014), cert. denied, — S. Ct. —, 2015 WL 132975 (Jan. 12, 2015) ("The role of the court on a summary judgment motion is to determine whether, as to any material issue, a genuine factual dispute exists." (quotations and citation omitted)). "On a motion for summary judgment, a fact is material if it 'might affect the outcome of the suit under the governing law.'" Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of New York, 746 F.3d 538, 544 (2d Cir. 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (holding that summary judgment is appropriate when the non-moving party has no evidentiary support for an essential element on which it bears the burden of proof); Selevan v. New York Thruway Auth., 711 F.3d 253, 256 (2d Cir. 2013) ("A defendant is entitled to

summary judgment where the plaintiffs have failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim on which the plaintiffs bear the burden of proof." (quotations, brackets and citation omitted)). Moreover, "[w]here the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011); see also Celotex Corp., 477 U.S. at 323, 106 S. Ct. 2548 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the nonmoving party," Dalberth v. Xerox Corp., 766 F.3d 172, 182 (2d Cir. 2014) (quotations and citation omitted), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Smith v. County of Suffolk, — F.3d —, 2015 WL 161701 (2d Cir. Jan. 14, 2015) (quotations and citation omitted); accord Delaney v. Bank of America Corp., 766 F.3d 163, 168 (2d Cir. 2014). "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Dalberth, 766 F.3d at 182 (quoting Anderson, 477 U.S. at 248, 106 S. Ct. 2505); see also Delaney, 766 F.3d at 168. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci, 557 U.S. 557, 129 S.Ct. at 2677 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); accord Smith, — F.3d —, 2015 WL 161701.

17

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); see also Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 486 (2d Cir. 2014). "[W]hen the moving party has carried its burden * * *, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts * * *[,]" Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting Matsushita Elec., 475 U.S. at 586-87, 106 S. Ct. 1348), and must offer "some hard evidence showing that its version of the events is not wholly fanciful." Miner v. Clinton County, New York, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." Lyons v. Lancer Ins. Co., 681 F.3d 50, 56 (2d Cir. 2012), cert. denied, 133 S. Ct. 1242, 185 L. Ed. 2d 178 (2013). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. 2505); and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012); see also Fabrikant, 691 F.3d at 205 ("[C]onclusory statements or mere allegations will not suffice to defeat a summary judgment motion." (quotations and citation omitted)).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record * * *; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

18

produce admissible evidence to support the fact." Rule 56(e) provides, in relevant part, that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: * * * (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed– show that the movant is entitled to it; * * *." Fed. R. Civ. P. 56(e).

As succinctly stated by plaintiffs: "The parties disagree about the application of the law to the undisputed facts of this case. Thus the parties agree that this appears to be an appropriate case for summary disposition as to the liability, if any, of the Police Officers." (Plf. Reply at 3). In other words, it is undisputed that there is no genuine issue of material fact requiring a trial in this action; leaving only a determination as to which party is entitled to judgment as a matter of law based upon such undisputed facts.

3.    Section 1983

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."

42 U.S.C. § 1983. Thus, the essential elements that plaintiffs must prove in order to establish their Section 1983 claims are: (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [them] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d

121, 127 (2d Cir. 2010) (citing Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, --- U.S. ----, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012). Only the latter element, i.e., whether defendants' conduct violated plaintiffs' constitutional rights, is at issue on this motion.

<ol type="a">
<li>Claims against the Officers and the County</li>
</ol>

<ol type="i">
<li>Constitutional Violation</li>
</ol>

"The Fourth Amendment prohibits unreasonable searches and seizures and provides that a warrant may not be issued without probable cause, but the text of the Fourth Amendment does not specify when a search warrant must be obtained." Fernandez v. California, — U.S. —, 134 S. Ct. 1126, 1131-32, 188 L. Ed. 2d 25 (2014) (quotations and citation omitted); see also Kentucky v. King, — U.S. —, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865 (2011) ("The text of the [Fourth] Amendment [] expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity.") "[A] warrant is generally required for a search of a home, * * * but the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Fernandez, — U.S. —, 134 S. Ct. at 1132 (quotations and citations omitted); see also King, — U.S. —, 131 S. Ct. at 1856 ("It is a basic principle of Fourth Amendment law * * * that searches and seizures inside a home without a warrant are presumptively unreasonable. * * * But * * * this presumption may be overcome in some circumstances because the ultimate touchstone of the Fourth Amendment is reasonableness." (quotations, brackets and citations omitted)). "[W]arrantless searches are allowed when the

circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement." King, — U.S. —, 131 S. Ct. at 1858.

"For Fourth Amendment purposes, the reasonableness of an officer's belief must be assessed in light of the particular circumstances confronting the officer at the time." Kerman v. City of New York, 261 F.3d 229, 235 (2d Cir. 2001); see also Harris v. O'Hare, 770 F.3d 224, 234 (2d Cir. 2014) ("We employ an objective test in deciding whether a claimed exigency justifies a warrantless intrusion on Fourth Amendment interests[,]* * * [which] turns on an examination of the totality of circumstances confronting law enforcement agents in the particular case." (quotations, alterations and citation omitted)). The Supreme Court has "repeatedly rejected a subjective approach, asking only whether the circumstances, viewed objectively, justify the action." King, — U.S. —. 131 S. Ct. at 1859 (quotations, emphasis and citation omitted).

The Supreme Court has long recognized "certain categories of permissible warrantless searches." Fernandez, — U.S. —, 134 S. Ct. at 1132; see also King, — U.S. —, 131 S. Ct. at 1856 ("[T]he warrant requirement is subject to certain reasonable exceptions.") "One well-recognized exception [to the warrant requirement] applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." King, — U.S. —, 131 S. Ct. at 1856 (quotations, brackets and citations omitted); accord Michigan v. Fisher, 558 U.S. 45, 47, 130 S. Ct. 546, 175 L. Ed. 2d 410 (2009).

"[W]hether the officers had probable cause * * *, is the first requirement for a warrantless search on the basis of exigent circumstances." Harris, 770 F.3d at 232. "[P]robable cause is a

fluid concept– turning on the assessment of probabilities in particular factual contexts– not readily, or even usefully, reduced to a neat set of legal rules." Harris, 770 F.3d at 232 (brackets in original) (quoting Illinois v. Gate, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). The "probable cause requirement must be applied by reference to the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences." Tierney v. Davidson, 133 F.3d 189, 196-97 (2d Cir. 1998) (quotations, brackets and citation omitted).

Although "an uncorroborated and anonymous 911 call is [not] sufficient to establish probable cause for a warrantless entry into a dwelling," Kerman, 261 F.3d at 236, the 911 call in this case was not, in fact, anonymous. Rather, Napoli provided her name and place of employment, i.e., the Suffolk County Adult Protective Services, which, *inter alia*, "provides services for persons over 18 who are physically and mentally impaired and who are in a situation where they are harmed or threatened with harm by the actions of themselves or others" and authorizes referrals for its services to be kept confidential and "made anonymously." www.suffolkcountyny.gov/Departments/Social Services/FamilyandChildrenServices.aspx. Accordingly, unlike anonymous 911 calls which lack any indicia of reliability, see, e.g. Kerman, 261 F.3d at 236, Napoli's 911 call was made from an identifiable and reliable source and was sufficient to provide a reasonable officer with probable cause to believe that exigent circumstances existed at the Soller residence.

The Supreme Court "has identified several exigencies that may justify a warrantless search of a home." King, — U.S. —, 131 S. Ct. at 1856. "Under the 'emergency aid' exception, * * * officers may enter a home without a warrant to render emergency assistance to an injured

22

occupant or to protect an occupant from imminent injury." King, — U.S. —, 131 S. Ct. at 1856 (quotations and citation omitted); see also Brigham City, Utah v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006) ("One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury."); Tierney, 133 F.3d at 196 ("[P]olice officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." (quotations and citation omitted)). "This 'emergency aid exception' does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises." Fisher, 558 U.S. at 47, 130 S. Ct. 546; see also Brigham City, 547 U.S. at 404, 126 S. Ct. 1943 ("The officer's subjective motivation is irrelevant.") "It requires only an objectively reasonable basis for believing * * * that a person within the house is in need of immediate aid[,]" Fisher, 558 U.S. at 47, 130 S. Ct. 546 (quotations, brackets and citations omitted), i.e., "that medical assistance was needed, or persons were in danger[.]" Id.; see also Kerman, 261 F.3d at 236 ("Probable cause for a forced entry in response to exigent circumstances requires finding a probability that a person is in 'danger.'") "Officers do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception[,]" Fisher, 558 U.S. at 49, 130 S. Ct. 546 (quotations omitted), and the court must refrain from "replac[ing] th[e] objective inquiry into appearances with [a] hindsight determination that there was in fact no emergency." Id.; see also Ryburn v. Huff, — U.S. —, 132 S. Ct. 987, 991-92, 181 L. Ed. 2d 966 (2012) ("[J]udges should be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation. * * * [R]easonableness must be judged from the perspective of a reasonable officer on

23

the scene, rather than with the 20/20 vision of hindsight' * * *." (quotations and citation

omitted)). "[T]he ultimate determination of whether a search was objectively reasonable in light

of exigent circumstances is a question of law * * *." United States v. Andino, 768 F.3d 94, 98

(2d Cir. 2014).

The officers' warrantless entry into the Soller residence was objectively reasonable

pursuant the emergency aid doctrine because, *inter alia*, (1) they were responding to a 911 call

from an identifiable person reporting information she received in the course of her employment

with SCAPS, i.e., that the Sollers had not been seen for over one (1) week at the Senior Center

they attended daily for their lunchtime meal, and expressing concern about the well-being of the

Sollers; (2) based upon the information Napoli provided to them, they knew (a) that the Sollers

(i) were elderly, (ii) lived with an adult "handicapped" son, (iii) ate a daily meal at the Senior

Center voraciously and (iv) lived in "bad condition[s]," and (b) that Mr. Soller had recently been

hospitalized for an unknown reason; and (3) no one responded when they knocked for twenty

(20) minutes on both the front and back doors of the Soller residence. Based upon such

information, an officer of reasonable competence could have concluded that one or more of the

reportedly elderly, physically impaired and/or mentally impaired occupants of the Soller

residence was in need of emergency aid and assistance and that a warrantless entry was justified

when no one responded to their knocking for twenty (20) minutes. Indeed, the officers arguably

would have been remiss in their duties had they just assumed that no one was home and left the

Soller residence in the face of a "check on welfare" call based upon a report from an employee of

SCAPS expressing concern for the welfare of two (2) elderly and/or physically impaired

individuals who reportedly lived with a mentally impaired son and had been missing for over one

24

(1) week. Thus, based upon the undisputed facts, plaintiffs cannot establish an essential element of their Section 1983 claims against the officers, i.e., that the officers' challenged conduct violated their constitutional rights. Accordingly, summary judgment is granted dismissing plaintiffs' Section 1983 claims against the officers in their entirety with prejudice.

Moreover, since the individual officers, themselves, did not violate plaintiffs' constitutional rights, "then the [County] cannot be liable to [plaintiffs] under Section 1983, regardless of whether the officers acted pursuant to a municipal policy or custom." Matican v. City of New York, 524 F.3d 151, 154 (2d Cir. 2008); see also City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) (per curiam) ("[I]f the [individual officers] inflicted no constitutional injury on [the plaintiff], it is inconceivable that [the municipal defendants] could be liable to [the plaintiff].") Accordingly, summary judgment is granted dismissing plaintiffs' Section 1983 claims against the County in their entirety with prejudice.

## ii.    Qualified Immunity[6]

In any event, the officers are entitled to qualified immunity from plaintiffs' Section 1983 claims seeking damages against them in their individual capacity.

"Qualified immunity protects federal and state officials from both civil damages and 'unnecessary and burdensome discovery or trial proceedings[,]'" Spavone v. New York State Dep't of Corr. Services, 719 F.3d 127, 134 (2d Cir. 2013) (quoting Crawford-El v. Britton, 523 U.S. 574, 598, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)); see also Coollick v. Hughes, 699 F.3d

---

[6] Plaintiffs did not respond in any way to the County's contention that the officers are entitled to qualified immunity from their Section 1983 claims against them.

211, 219 (2d Cir. 2012) (accord), "where the officials' conduct was not in violation of a 'clearly established' constitutional right." Sudler v. City of New York, 689 F.3d 159, 174 (2d Cir. 2012), cert. denied, 133 S. Ct. 2777, 186 L. Ed. 2d 219 (2013); see also Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) ("A federal official is entitled to qualified immunity from suit for money damages unless the plaintiff shows that the official violated a statutory or constitutional right, and that the right was 'clearly established' at the time of the challenged conduct.") "It is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." Spavone, 719 F.3d at 134 (quotations and citation omitted); see also Sudler, 689 F.3d at 174 ("Qualified immunity is an affirmative defense, on which the defendant officials bear the burden of proof.")

"Qualified immunity * * * extends to circumstances where an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' and applies 'regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Spavone, 719 F.3d at 135 (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)); see also Vincent v. Yelich, 718 F.3d 157, 166 (2d Cir. 2013), cert. denied, — S. Ct. —, 2015 WL 132971 (Jan. 12, 2015) ("Qualified immunity, an affirmative defense on which the defendant officials bear the burden of proof, * * * protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 793 (2d Cir. 2002) ("Individual public officials are entitled to qualified immunity from claims for monetary damages

if the statutory right infringed was not clearly established at the time of the violation or if it was objectively reasonable for officials to believe their acts did not infringe upon those rights.")

"So long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity." Spavone, 719 F.3d at 135 (quotations and citation omitted); see also Sudler, 689 F.3d at 174 ("If the conduct did not violate a clearly established right, or if it was objectively reasonable for the official to believe that his conduct did not violate such a right, then the official is protected by qualified immunity." (quotations, brackets and citation omitted)). "In assessing objective reasonableness, [courts] look to whether officers of reasonable competence could disagree on the legality of the defendant's actions[,]" McGarry v. Pallito, 687 F.3d 505, 512 (2d Cir. 2012) (quotations and citation omitted); see also Manganiello v. City of New York, 612 F.3d 149, 165 (2d Cir. 2010), in light of the "particular factual context" he confronted. Zalaski v. City of Hartford, 723 F.3d 382, 389 (2d Cir. 2013). "In short, if at least some reasonable officers in the defendant's position could have believed that [the challenged conduct] was within the bounds of appropriate police responses, the defendant officer is entitled to qualified immunity." Id., 723 F.3d at 389 (brackets in original) (quotations and citation omitted). Where, as here, "there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court." Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007).

•      "[Q]ualified immunity provides a broad shield[] * * * to ensure 'that those who serve the government do so with the decisiveness and the judgment required by the public good.'" Zalaski, 723 F.3d at 389 (quoting Filarsky v. Delia, — U.S. —, 132 S. Ct. 1657, 1665, 182 L. Ed. 2d 662 (2012)). "Toward that end, it affords officials 'breathing room to make reasonable but

27

mistaken judgments' without fear of potentially disabling liability." Id. (quoting Messerschmidt v. Millender, — U.S. —, 132 S. Ct. 1235, 1244, 182 L. Ed. 2d 47 (2012)). "Qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" Vincent, 718 F.3d at 166 (emphasis omitted) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)); see also Sudler, 689 F.3d at 174 ("Qualified immunity * * * shields government officials from liability when they make reasonable mistakes about the legality of their actions * * *." (quotations and citation omitted)).

Given the specific factual situation confronted by the officers, it would not have been apparent to an officer of reasonable competence that his warrantless entry and subsequent search of the Soller residence were unlawful. In other words, in the particular factual context of this case, it would not be objectively unreasonable for an officer of reasonable competence to conclude that there was a risk that an elderly, physically impaired and/or mentally impaired occupant at the Soller residence needed police or medical assistance, thereby justifying a warrantless entry and subsequent search of the Soller residence. Accordingly, the branch of the County's motion seeking judgment dismissing plaintiffs' Section 1983 claims against the officers in their individual capacity as barred by the doctrine of qualified immunity is granted and plaintiffs' Section 1983 claims against the officers in their individual capacity are dismissed in their entirety with prejudice as barred by the doctrine of qualified immunity.[7]

---

[7] In light of this determination, it is unnecessary to consider the County's remaining contentions seeking dismissal of plaintiffs' Section 1983 claims against the officers.

b.    Claims against the Social Services Representative[8]

A Section 1983 claim must allege the personal involvement of any individual defendant

in the purported constitutional deprivation.  See Raspardo v. Carlone, 770 F.3d 97, 115, 116 (2d

Cir. 2014) ("If a defendant has not *personally* violated a plaintiff's constitutional rights, the

plaintiff cannot succeed on a § 1983 action against th[at] defendant. * * * § 1983 requires

individual, personalized liability on the part of each government defendant."); Spavone, 719 F.3d

at 135 ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983." (quotations and citation omitted)).  "Personal

involvement" may be established by evidence of direct participation in the challenged conduct, or

by evidence of a supervisory official's "(1) failure to take corrective action after learning of a

subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful

conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4)

deliberate indifference to the rights of others by failing to act on information regarding the

unlawful conduct of subordinates."  Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d

Cir. 2003); see also Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013).  A

complaint based upon a violation under Section 1983 that does not allege facts establishing the

---

[8]  In their memorandum of law in opposition to the County's motion, plaintiffs indicate, *inter alia*, that "the County's Memorandum of Law [] correctly points out that **former Defendant**[] 'Social Services Representative,' * * * should not have been named as [a] part[y] to this action * * *." (Plf. Mem. at 3) (emphasis in original).  According to plaintiffs, since they voluntarily dismissed their claims against the "Social Services Representative" on September 13, 2014, before the County served its motion, the branches of the motion seeking dismissal of their claims against the "Social Services Representative" are moot.  However, contrary to plaintiffs' contention, the "Social Services Representative" was not one of the four (4) defendants against whom they voluntarily dismissed their claims in the Notice of Voluntary Dismissal filed on September 13, 2014.  Accordingly, I consider the County's contentions seeking dismissal of plaintiffs' claims against the "Social Services Representative" as unopposed.

29

personal involvement of an individual defendant fails as a matter of law. See Costello v. City of Burlington, 632 F.3d 41, 48-9 (2d Cir. 2011).

Plaintiffs' only claim against the Social Services Representative is that he or she "came to [their] house relating to January 9, 2009 incident with a false report." That allegation is insufficient to state a claim for a constitutional violation. See, e.g. Graham v. City of Albany, No. 1:08-cv-892, 2009 WL 4263510, * 9 (N.D.N.Y. Nov. 23, 2009) ("[T]he mere filing of false police reports, by themselves and without more, does not create a right of action in damages under 42 U.S.C. § 1983." (quotations, brackets and citations omitted)). Since plaintiffs have not alleged, much less established, the direct participation of the Social Services Representative in any violation of their constitutional rights, nor any basis upon which to find the Social Services Representative liable in a supervisory capacity, summary judgment is granted dismissing their Section 1983 claims against the Social Services Representative in their entirety with prejudice.

C.    Claims against the Town

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012), cert. denied, 134 S. Ct. 125, 187 L. Ed. 2d 255 (2013); accord Matusick v. Erie Co. Water Auth., 757 F.3d 31, 62 (2d Cir. 2014). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." Jones, 691 F.3d at 80; see also Connick v. Thompson, — U.S. —, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); Los

30

Angeles County, California v. Humphries, 562 U.S. 29, 131 S. Ct. 447, 452, 178 L. Ed. 2d 460 (2010) ("[A] municipality cannot be held liable solely for the acts of others, *e.g., solely* because it employs a tortfeasor." (emphasis in original) (quotations and citation omitted)); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008); see also Connick, — U.S. —, 131 S. Ct. at 1359 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting Monell, 436 U.S. at 691, 98 S. Ct. 2018)); Humphries, 562 U.S. 29, 131 S. Ct. at 452 ("[A] municipality may be held liable when execution of a government's *policy or custom* . . . inflicts the injury." (emphasis in original) (quotations and citation omitted)).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, — U.S. —, 131 S.Ct. at 1359. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions - either expressly or tacitly." Jones, 691 F.3d at 81. "Thus, a plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." Id. To establish such deliberate indifference, "a plaintiff must show that

a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." Jones, 691 F.3d at 81. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, — U.S. —, 131 S. Ct. at 1360 (quotations and citation omitted). "[D]eliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." Jones, 691 F.3d at 81; see also Cash, 654 F.3d at 334.

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion that a municipality has * * * a custom or policy is insufficient [to withstand dismissal] in the absence of allegations of fact tending to support, at least circumstantially, such an inference * * *." (quotations, alterations and citation omitted)); accord Zherka v. City of New York, 459 F. App'x 10, 12 (2d Cir. Jan. 19, 2012) (summary order). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012); accord Triano v. Town of Harrison, N.Y., 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012).

Plaintiffs do not allege, *inter alia*, any facts from which it may reasonably be inferred that any individual officer or employee of the Town violated their constitutional rights or that an official policy or custom of the Town caused them constitutional injury. Accordingly, plaintiffs' Section 1983 claims against the Town are *sua sponte* dismissed with prejudice for failure to state a claim for relief.

D.    Supplemental Jurisdiction

Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, see Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 391-92, 118 S. Ct. 2047, 141 L. Ed. 2d 364 (1998), a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). See Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 129 S. Ct. 1862, 1866-1867, 173 L. Ed. 2d 843 (2009) (holding that a district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary); Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 117 (2d Cir. 2013) ("The exercise of supplemental jurisdiction is within the sound discretion of the district court.")  The court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over any pendent state law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); accord Kroshnyi v. U.S. Pack Courier Servs., Inc., 771 F.3d 93, 102 (2d Cir. 2014).  Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims. See Cohill, 484 U.S. at 350 n. 7; Kroshnyi, 771 F.3d at 102 ("A court may decline to exercise supplemental jurisdiction[] * * * if, among other factors * * * [it] has dismissed all claims over which it has original jurisdiction." (quotations and citations omitted)); Delaney, 766 F.3d at 170 ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (quotations and citation omitted)).

In light of the dismissal of all federal claims in this action, and upon consideration of all

relevant factors, *i.e.*, judicial economy, convenience, fairness and comity, I decline to exercise supplemental jurisdiction over any remaining state law claims in this action. Accordingly, to the extent the SAC asserts any state law claims, those claims are *sua sponte* dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Pursuant to 28 U.S.C. § 1367(d), the statute of limitations for any state law claims timely filed in this Court is tolled for a period of **thirty (30) days after the date of this order** unless a longer tolling period is otherwise provided under state law.

E.      Motion to Amend July 15, 2013 Minute Order

Plaintiffs seek to amend this Court's July 15, 2013 Minute Order granting Mr. Lecci's motion to be relieved as their counsel in this action to require him "to return to [them] the $5,000 'retainer' they paid him, less his actual out-of-pockets costs paid for service of process, upon the grounds that (a) he failed to disclose [his retainer agreement with plaintiffs] on July 15, 2013 and (b) he did not earn [the retainer] * * *." (Notice of Motion dated September 17, 2014 at 1-2). In support of their motion, plaintiffs rely upon a declaration of Mr. Bainton, their present counsel, regarding the work Mr. Lecci purportedly did, and should have done, during his representation of them in this case. Mr. Bainton concedes that Mr. Lecci appeared before this Court on behalf of plaintiffs for at least five (5) pretrial conferences from February 11, 2013 through July 15, 2013, but contends that "[a]pparently at none of th[o]se conferences did Mr. Lecci suggest that the Court conduct an Initial Conference pursuant to its Individual Rule 5B so that he could obtain from Defendants the basic documents needed by any attorney to assess the relative strength of Plaintiffs' case or otherwise conduct the discovery needed * * *." (Bainton Decl., ¶ 6).

However, as Mr. Bainton was not present for any of those conferences, he has no personal knowledge about what Mr. Lecci did or did not do on behalf of plaintiffs during those proceedings. Although Mr. Bainton apparently assumes that Mr. Lecci only requested, or agreed to, repeated adjournments of the pretrial conferences, in actuality Mr. Lecci, *inter alia*, engaged in settlement negotiations with the County; exchanged at least some discovery with defense counsel; attempted to demonstrate to the Court and defense counsel that Kenneth sustained physical and emotional injuries during the incident; and advised of his attempts to retain an expert to establish Kenneth's claimed psychological injuries. Mr. Lecci avers, *inter alia*, that he expended nine and four-tenths (9.4) hours "in conferencing with the Plaintiffs and in court appearances," (Affidavit of Salvatore A. Lecci, Esq. ["Lecci Aff."], ¶ 14), and that his "customary hourly rate" is four hundred fifty dollars ($450.00). (Id.)

Mr. Bainton also concedes that Mr. Lecci "caused a process server to serve the second amended complaint upon Defendants and then filed proofs of service." (Id., ¶ 9). Thus, contrary to Mr. Bainton's conclusory contentions that Mr. Lecci did "absolutely nothing to advance this case toward resolution," (id., ¶ 17), and "did not earn" his retainer fee, (id., ¶ 22), Mr. Lecci clearly earned most, if not all, of the retainer fee that plaintiffs paid to him.

According to Mr. Bainton, "pursuant to Local Civil Rule 1.4[,] [Mr. Lecci] should have [] disclosed" the retainer agreement to the Court "as part of the process of his withdrawal as counsel to Plaintiffs." (Bainton Decl., ¶ 11). While Mr. Bainton is correct that Rule 1.4 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule 1.4") provides, in relevant part, that an attorney's motion to withdraw as counsel "may be granted only upon a showing by affidavit or otherwise of satisfactory reasons

35

for withdrawal * * * and the posture of the case, including its position, if any, on the calendar, and whether or not the attorney is asserting a retaining or charging lien[,]" Mr. Lecci's retention of a retainer fee paid to him under a retainer agreement executed by plaintiffs does not constitute the assertion of a retaining or charging lien.[9] Thus, Mr. Lecci was not required under Local Civil Rule 1.4 to disclose his retainer agreement with plaintiffs to the Court upon his motion to withdraw as their counsel. Accordingly, plaintiffs' motion to amend the July 15, 2013 Minute Order is denied.

---

[9] Section 475 of the New York Judiciary Law "governs attorneys' charging liens in federal courts sitting in New York." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998). Section 475 provides, in relevant part, that "[f]rom the commencement of an action * * * the attorney who appears for a party has a lien upon his or her client's cause of action * * * which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination." N.Y. Judiciary Law § 475. Thus, "[u]nder New York law, an attorney who is discharged is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in which the attorney had rendered legal services." Stair v. Calhoun, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010).

A retaining lien "gives an attorney the right to keep, with certain exceptions, all of the papers, documents and other personal property of the client which have come into the lawyer's possession in his or her professional capacity as long as those items are related to the subject representation." Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C., 370 F.3d 259, 262 n. 3 (2d Cir. 2004) (quoting Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York, 302 A.D.2d 183, 186, 754 N.Y.S.2d 220, 223 (1st Dep't 2002)); see also Allstate Ins. Co. v. Nandi, 258 F. Supp. 2d 309, 311 (S.D.N.Y. 2003) ("New York cases recognize a distinct common law 'retaining lien' that allows withdrawing counsel to retain pleadings and other documents in counsel's possession until counsel is paid for his or her work." (quotations and citation omitted)). "The right to a retaining lien is grounded in [New York] common law and is enforced in federal courts unless a specific federal law alters the parties' rights." Stair, 722 F. Supp. 2d at 276. "A retaining lien attaches when the action is commenced and remains in force when an attorney is discharged without cause." Id. (quotations and citation omitted). Clearly, neither type of lien is applicable to this case.

III.  Conclusion

For the reasons stated herein, the branch of plaintiffs' cross motion seeking leave to amend the SAC to substitute P.O. Boudreaux and Sgt. Todoro for defendants "Badge # 5972" and "Road Supervisor #43G," respectively, is granted, and the cross motion is otherwise denied; the County's motion seeking judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is treated as a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure; summary judgment is granted dismissing plaintiffs' Section 1983 claims against the officers, the County and the "Social Services Representative" in their entirety with prejudice pursuant to Rule 56 of the Federal Rules of Civil Procedure; plaintiffs' Section 1983 claims against the Town are *sua sponte* dismissed in their entirety with prejudice for failure to state a claim for relief; any state law claims asserted in the SAC are *sua sponte* dismissed in their entirety without prejudice pursuant to 28 U.S.C. § 1367(c)(3); and plaintiffs' motion to amend the July 15, 2013 Minute Order is denied.  The Clerk of the Court shall enter judgment in favor of defendants and close this case.

SO ORDERED.                    s/ Sandra J. Feuerstein
                               _____
                               SANDRA J. FEUERSTEIN
                               United States District Judge

Dated: February 3, 2015
       Central Islip, N.Y.

37